IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DESMOND RAY KING,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-1280-CJP[1] |
| | ) |
| **JAMES N. CROSS,** | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**PROUD, Magistrate Judge:**

Petitioner Desmond Ray King, an inmate in the Federal Bureau of Prisons ("BOP") incarcerated at FCI-Greenville, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the BOP's alleged failure to properly address his request for a transfer to the Chicago Residential Re-entry Center. For the reasons set forth below, the Petition is denied.

# FACTUAL BACKGROUND

Desmond King is serving an aggregate federal prison sentence of 195 months (16 years, 3 months) for two convictions for bank robbery (*See* Doc. 14-1; Doc, 14-2). His projected release date is October 1, 2017 (Doc. 14-7, p. 2). At all times relevant to this matter, King had a security designation of "medium" and a custody

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (Doc. 20).

classification of "in," which is the second highest custody level within the BOP (Doc. 14-7, p. 3). He was designated to FCI-Greenville, a facility that is equipped to provide a level of security and staff supervision commensurate with his custody level (Doc. 14-7, p. 3).

On August 15, 2012, King requested a transfer to the Chicago Residential Reentry Center ("the Chicago RRC")[2] even though he had approximately five years remaining on his sentence because he wanted to transfer to "a less restrictive environment" (Doc. 1-2, pp. 1–2). According to King, his case manager dismissed the transfer request outright because his release date was not set to occur until 2017 (Doc. 1-2, p. 1). King then filed a request for an administrative remedy (BP-9) with the warden of FCI-Greenville, James Cross (Doc. 1-2, p. 2). Warden Cross denied King's request for an immediate transfer to the Chicago RRC because he had "several years left remaining on [his] sentence" (Doc. 1-2, p. 2). Warden Cross further stated, "Your Unit Team will evaluate your individual case when you are closer to your release date, as directed by the Second Chance Act of 2007." (Doc. 1-2, p. 4).

King filed an appeal with the BOP's Regional Director (BP-10) (Doc. 1-2, p. 7). The Regional Director remanded King's appeal back to FCI-Greenville for further review and an additional response (Doc. 1-2, p. 9). Warden Cross then explained that King's transfer request would be considered at his next scheduled program

---

[2] RRCs were previously known as Community Corrections Centers ("CCCs"), and are also commonly referred to as halfway houses. The Court uses the designation "RRC" throughout this order.

review in November 2012 (Doc. 1-2, p. 11).

Dissatisfied with Warden Cross's additional response, King filed another appeal with the BOP's Regional Director (Doc. 1-2, p. 13). The Regional Director's response reiterated that King's transfer request would be evaluated at his program review in November 2012 (Doc. 1-2, p. 16).

King then appealed to the BOP's Office of General Counsel (BP-11) (Doc. 1-2, p. 18). On December 4, 2012, King's appeal was rejected and returned to him because it failed to comply with procedural requirements (*See* Doc. 1-2, p. 19). King was instructed that he had 15 days to resubmit his appeal to the General Counsel in proper form (Doc. 1-2, p. 19). King received the Notice of Rejection on December 12, 2012 (Doc. 1-2, p. 19). However, he waited until December 27, 2012 to re-submit his appeal to the General Counsel (Doc. 15-1). According to King, he never received a response to his appeal from the General Counsel. Additionally, before he re-submitted his appeal to the General Counsel, King filed the instant habeas petition. He dated his petition December 16, 2012, and it was received by the Court and filed on December 19, 2012 (*See* Doc. 1).

## **DISCUSSION**

The writ of habeas corpus may be granted where the defendant is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3).

In his habeas petition, King alleges that his request for an immediate transfer

to an RRC was denied by the BOP based on the Second Chance Act, 18 U.S.C. § 3624(c).  According to him, the BOP misapplied § 3624(c) because he was not seeking pre-release placement in an RRC.  Instead, he was seeking a routine transfer to an RRC under 18 U.S.C. § 3621(b), and therefore he was entitled to have his transfer request assessed on an individualized basis using the factors set forth in that statute.  He claims the BOP never performed an individualized assessment using the requisite factors, and the BOP's actions were contrary to 18 U.S.C. § 3621(b) and violated his due process rights (Doc. 1).

In response to King's petition, Respondent questions whether a habeas action is the proper mechanism for King to challenge the BOP's denial of his transfer request (Doc. 14, p. 3 n.3).  Respondent also contends that King did not exhaust his administrative remedies prior to filing his habeas petition, and that King's claims are meritless (Doc. 14, pp. 3, 6).

As discussed in detail below, the Court is also dubious regarding its jurisdiction to entertain this petition.  However, even if a habeas action is the appropriate method for King to bring his claim, Respondent is correct that King failed to exhaust his administrative remedies and his claims are meritless.

**A.     The Court Lacks Subject Matter Jurisdiction Over the Petition Under 28 U.S.C. § 2241**

A petition for a writ of habeas corpus is the proper vehicle for a prisoner's claims if the prisoner is challenging the fact or duration of his confinement, and seeking an immediate of speedier release.  *Preiser v. Rodriguez*, 411 U.S. 475,

500 (1973); *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 138 (7th Cir. 1995) ("Typically the writ of habeas corpus is used to completely free an inmate from unlawful custody.") On the other hand, if a prisoner is challenging the conditions of confinement, then a civil rights action is the proper vehicle for his claims. *Preiser*, 411 U.S. at 499.

In *Graham v. Broglin*, the Seventh Circuit provided guidance to determine whether the appropriate remedy for a prisoner is a habeas corpus action or a civil rights action:

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. *But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law*, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.

922 F.2d 379, 381 (7th Cir. 1995) (emphasis added).

Put differently, if the prisoner is not seeking release, or release is not available as a remedy to the prisoner's claims, then "his challenge can only concern the conditions of his confinement . . . not the fact of his confinement. As such, he may not proceed with a habeas petition." *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005). *See also Pischke v. Litscher*, 178 F.3d 497, 499 (7th Cir. 1999) (holding habeas corpus is the proper vehicle for presenting a claim "only if the

prisoner is seeking to 'get out' of custody in a meaningful sense.")  Based on the distinction outlined in *Graham*, the Seventh Circuit has held that habeas corpus was not the proper vehicle to challenge the denial of a request for work release, a routine transfer between prisons, or a change in housing quarters within a prison. *Pischke*, 178 F.3d at 500–01; *Falcon*, 52 F.3d at 139; *Adams v. Beldsoe*, 173 F. App'x 483, 484 (7th Cir. 2006).  These challenges were more akin to a civil rights action seeking a different program, location, or environment than to a habeas corpus action seeking a quantum change in level of custody.

Here, King's challenge also falls on the civil rights side of the line.  According to King, he is challenging the BOP's decision regarding a routine transfer request, and the manner in which it was made (Doc. 1; Doc. 15).  He asks the Court to order the BOP to transfer him to the Chicago RRC (Doc. 1).  He is not requesting outright release, and release is not an available remedy.[3]  Clearly, King is not challenging being in custody but only the location in which he is in custody, and therefore his challenge *only* concerns the conditions of his confinement.  Habeas corpus is not the proper vehicle for such a challenge.

A habeas corpus action is also inappropriate here because King does not contend that his custody is unlawful.  Instead, he claims only that the BOP failed to discharge a statutory duty to consider him for transfer to an RRC.  "Section 2241 does not permit review of prison and parole decisions after the fashion of the

---

[3] The only thing the Court could possibly do in this situation is order the BOP to reconsider King's transfer request.  However, even if the BOP granted the request, King would not be released from custody, nor would the duration of his custody be shortened.  King would still be serving the same amount of time, but in a different location.

Administrative Procedure Act; a prisoner seeking relief under § 2241 must demonstrate that the custody is unlawful, and not just that an administrative official made a mistake in the implementation of a statute or regulation." *Bush v. Pitzer,* 133 F.3d 455, 456–57 (7th Cir. 1997).

That being said, district courts within the Seventh Circuit, including the Southern District of Illinois, have reached the opposite conclusion and allowed federal prisoners to bring similar claims in § 2241 petitions. *See, e.g., Moody v. Rios*, Case No. 13-cv-1034, 2013 WL 5236747, at *1 n.1 (C.D. Ill. Sept. 17, 2013) (holding § 2241 is the proper way to challenge denial of inmate's request to be placed in a halfway house for more than six months); *Feazell v. Sherrod*, Case No. 10-cv-901, 2010 WL 5174355, at *1 (S.D. Ill. Dec. 16, 2010) ("[T]he Seventh Circuit has recognized that a § 2241 petition is a proper vehicle by which to challenge the BOP's decisions about inmate placement, though not to challenge BOP policies governing such placement."); *Pence v. Holinka,* Case No. 09–cv–489, 2009 WL 3241874, at *1 (W.D. Wis. Sept. 29, 2009) (holding § 2241 is the proper way to challenge BOP's decision to place inmate in a halfway house for only six months); *Woods v. Wilson*, Case No. 09-cv-0749, 2009 WL 2579241, at *1 (N.D. Ill. Aug. 19, 2009) (holding § 2241 is the proper way to bring claim that "BOP has not correctly used the criteria set forth in 18 U.S.C. § 3621 to determine his placement into a halfway house").

Therefore, assuming arguendo that King's claims are cognizable under § 2241 and the Court may exercise jurisdiction over the petition, King's petition

would still be denied because he failed to exhaust his administrative remedies and his claims have no merit.

### B. King Failed to Exhaust His Administrative Remedies

There is no statutory exhaustion requirement that applies to § 2241 petitions. *Gonzalez v. O'Connell,* 355 F.3d 1010, 1016 (7th Cir. 2004) (citing *James v. Walsh,* 308 F.3d 162, 167 (2d Cir. 2002)). The Seventh Circuit, however, has recognized that a common law exhaustion requirement applies. *Richmond v. Scibana,* 387 F.3d 602, 604 (7th Cir. 2004).

In order to exhaust his administrative remedies, a federal prisoner must comply with the Administrative Remedy Program promulgated by the BOP, which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The process includes a request for informal resolution, formal request for remedy to the Warden (BP-9), appeal to the BOP Regional Director (BP-10), and appeal to the General Counsel in the BOP Central Office (BP-11). 28 C .F.R. §§ 542.13, 542.14, and 542.15. A federal inmate must complete all steps of the administrative remedy process prior to filing a habeas petition under § 2241, unless certain extenuating circumstances warranting an exception to the common law rule are applicable.[4]

---

[4] Under common law, administrative exhaustion may be excused if: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite timeframe for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002) (citing *McCarthy v. Madigan,* 503 U.S. 140, 146-48 (1992)).

Here, King completed only three of the four steps in the administrative review process. He sought informal resolution with his case manager, he made a formal request for resolution to Warden Cross, and he appealed to the BOP Regional Director. He did not, however, complete the fourth and final step of filing an appeal with the General Counsel in the BOP Central Office. After King submitted his appeal to the General Counsel, he was informed that it was rejected because it was procedurally defective. He was given an extension of time to resubmit his appeal in proper form, but King did not re-submit his appeal within the prescribed timeframe. Instead, he filed the instant habeas petition. He then re-submitted his appeal on December 27, 2012, but only after the deadline for doing so had passed and after he had already filed this habeas petition.

Warden Cross argues that King failed to exhaust his administrative remedies because his appeal was never considered by the General Counsel in the BOP Central Office (Doc. 14). In response, King argues that he should be excused from exhausting his administrative remedies because the BOP "lacks the competence to resolve this issue" and has "continually disregarded policy causing [his] Due Process rights to be violated" (Doc. 1; Doc. 15). King claims that his original appeal to the General Counsel was, in fact, submitted in proper form, and therefore the rejection of his appeal was "frivolous" (Doc. 15). King further claims that after he re-submitted his appeal to the General Counsel, he never received a response, and the General Counsel routinely fails to provide timely responses (Doc. 15).

The Court finds King's failure to exhaust his administrative remedies with regard to the issue at hand is not excusable. He easily could have resubmitted his rejected appeal to the General Counsel. But he chose to skirt the administrative procedure and file a habeas petition instead. The Court cannot accept his argument that resubmitting his appeal was futile because the General Counsel routinely takes months to respond, or fails to respond altogether. The fact is that King has no idea what would have happened with regard to his appeal at the Central Office if he had resubmitted it in a timely fashion. The Central Office would have been required to provide a decision within forty days, and if it failed to do so, King then would have been free to file his habeas petition. In short, King made the decision to file this petition instead of completing the administrative remedy process according to the BOP's rules. Due to the failure to exhaust his administrative remedies, King's petition for a writ of habeas corpus must be denied.

### C. King Is Not Entitled to Habeas Relief on the Merits of His Claim

It should be noted that even if King had exhausted his administrative remedies, his petition for a writ of habeas corpus would be denied on the merits. To obtain habeas relief, a federal prisoner must show he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). King has not made this showing with respect to either.

#### 1. Statutory Background

King's claims implicate the two statutes which govern the BOP's authority to

place an inmate in an RRC: 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Under 18 U.S.C. § 3621(b), the sole authority to designate the place of confinement for federal prisoners has been delegated to the BOP. 18 U.S.C. § 3621(b). The BOP also has the authority to transfer a prisoner from one penal or correctional facility to another "at any time." *Id.* The BOP is given broad discretion to designate any penal or correctional facility that is available, appropriate, and suitable. *Id.* Initial placement and transfer determinations must be made with regard for the five factors listed in § 3621(b): (1) the resources of the facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 944(a)(2) of title 28. 18 U.S.C. §§ 3621(b)(1)–(5); 28 C.F.R. § 524.11.

Under the second statute, 18 U.S.C. § 3624(c), known as the Second Chance Act, the BOP is charged with preparing prisoners who are approaching the end of their sentences for re-entry into society. *See* 18 U.S.C. § 3624(c). Under § 3624(c), the BOP is obligated to consider placing an inmate in an RRC during the final portion of their sentence for up to twelve months. *See* 28 C.F.R. § 570.22. Again, this determination must be made in a manner consistent with the five factors in § 3621(b). 18 U.S.C. § 3624(c).

Here, King is years away from the completion of his sentence, and therefore § 3621(b) governs the BOP's authority to consider his request for an immediate transfer to the Chicago RRC. *See, e.g., Sacora v. Thomas*, 628 F.3d 1059, 1062

(9th Cir. 2010) ("[Section 3621(b)] governs the BOP's authority in cases where a prisoner who has more than a year left to serve of his or her prison sentence requests a transfer to such a facility.")

### 2. Analysis

At the outset, to the extent King is claiming the BOP's denial of his transfer request violated the Constitution, specifically his right to due process, it is clear that such a claim must fail. "It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest." *Solomon v. Elsea*, 676 F.2d 282, 284 (7th Cir. 1982). However, King does not have a liberty interest in obtaining a transfer to a facility more desirable to him, such as the Chicago RRC. Congress has given the BOP full discretion in determining the placement of federal prisoners. *See* 28 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment.") To that end, the Supreme Court has made it abundantly clear that a prisoner has no constitutional right to select a particular correctional facility for his placement or to be transferred to a different facility upon request. *Olim v. Waukinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Without a protectable liberty interest, King cannot claim that he was deprived of his right to due process when his request for a prison transfer was denied.

Additionally, to the extent King is claiming that the BOP's denial of his transfer request was contrary to federal law and the individualized factors set forth

in 18 U.S.C. § 3621(b), any such claim must fail. King has made no showing that the BOP acted in a manner inconsistent with the law in connection with his case.

The crux of King's claim is that, under § 3621(b), he was entitled to an immediate, individualized evaluation considering the five factors as soon as he made his transfer request.[5] However, nothing in the language of § 3621(b) suggests that is true. In fact, some courts have held that the BOP is not required to consider the factors unless and until it decides to transfer an inmate; then the factors should be considered in selecting the facility. *See, e.g., Muniz v. Sabol,* 517 F.3d 29, 36 n. 14 (1st Cir. 2008), *cert. denied,* 555 U.S. 853 (2008) (holding that § 3621(b) factors need not be considered until the BOP has decided to transfer a prisoner because "Congress surely did not intend" that "the BOP would never be free to decline a transfer request without considering the five factors"); *Sanz v. United States*, Case No. 07-61596-CIV, 2008 WL 1820641, at *3 (S.D. Fla. Apr. 23, 2008) ("[W]hile a prisoner is free to apply for a transfer at any time, the BOP is not required to review such an application under § 3621(b)."); *Rodriguez-Calderon v. Lindsay*, Case No. 3:05-CV-2640, 2007 WL 2756878, at *1 (M.D. Pa. Sept. 20, 2007) ("An inmate simply cannot trigger the consideration of prison placement factors by asking for a transfer because an inmate has no right to be housed in any particular prison.")

But certainly, inmates are not entitled to an "on-demand" individualized

---

[5] King explicitly stated that his "argument is dated on August 15TH, 2012 . . . when [he] simply walked into the Case Manager's office and requested a transfer. . . . [His] individual assessment began when his Case Manager asked for his release date. When [he] responded '2017,' the Case Manager said 'No' and the individual assessment was terminated. . . This is what violated [King's] constitutional rights and is the basis of this Petition." (Doc. 15, pp. 6–7).

assessment of their transfer requests at all times of the inmates' choosing. To suggest otherwise is preposterous. As the Eighth Circuit explained

> [A]n inmate is [not] entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever the inmate chooses to make such a request. Taken to its logical conclusion, the argument advanced by the inmates would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility, and to deny such requests only after an individualized consideration of each inmate's request and the five statutory factors. . . . Congress surely did not intend such a result.

*Miller v. Whitehead,* 527 F.3d 752, 757 (8th Cir. 2008) (citing *Muniz*, 517 F.3d at 36 n.14). *See also Calloway v. Thomas*, 2009 WL 1925225, at *7 (D. Ore. July 1, 2009) ("[P]etitioner's interpretation could potentially create an unworkable situation for the BOP, requiring it to analyze such requests under § 3621(b) at an inmate's whim.").

Current BOP policy provides that when an inmate requests consideration for a transfer to an RRC prior to the pre-release timeframe, the staff must individually consider the request (Doc. 14-5). "There is no need, however, to immediately perform the individualized review at the moment it is submitted" (*Id.*) Instead, the staff should inform the inmate that the request will be evaluated during the next program review (*Id.*) Federal regulations provide that inmates receive a program review at least once every 180 days. 28 C.F.R. § 524.11(a)(2).

Here, the BOP followed its policy to the letter. King made his request for an immediate transfer to an RRC in August 2012. He was informed by Warden Cross that his request for an immediate transfer to an RRC would be evaluated at his next

program review. On October 20, 2012, King's BOP Unit Team conducted his program review. Although King baldly claims that he did not receive consideration for RRC placement at his program review, the evidence speaks to the contrary. King's case manager stated in his affidavit that "[b]ecause of the broad scope of each Program Review, the factors listed in 18 U.S.C. § 3621(b) are necessarily evaluated" (Doc. 14-7, p. 3). Indeed, the Program Review includes information regarding (1) King's security designation and custody classification, from which the BOP assesses the resources and appropriateness of the requested facility; (2) the nature of the offense for which King is currently imprisoned; (3) a thorough review of King's history and characteristics, including his academic and vocational skills, his participation in programs within the prison, his disciplinary history, his social development, and his ability to engage in activities of daily living outside the prison; and (4) notes about the sentencing court's recommendations (Doc. 14-7, pp. 6–22). Thus the record before the Court demonstrates that the BOP considered the five factors set forth in § 3621(b) at King's program review, and in light of that consideration, concluded that a transfer to an RRC was not appropriate or justified (Doc. 14-7, p. 4).

Based on the foregoing, King has failed to show any action taken by BOP in this matter that is unconstitutional or illegal; thus, he cannot demonstrate that he is in custody in violation of the Constitution or federal law. Furthermore, he has already received the only relief this Court could properly order, *i.e.,* individualized consideration for RRC placement in accordance with § 3621(b). Accordingly,

King's habeas petition must be denied on the merits.

## CONCLUSION

A petition for a writ of habeas corpus is not the proper vehicle for King's claims, and the Court is without subject matter jurisdiction to entertain his petition. Even if King's claims were cognizable under § 2241, his petition would be denied because he failed to exhaust his administrative remedies and his claims have no merit. Accordingly, Desmond King's petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This cause of action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: January 16, 2014

s/ **Clifford J. Proud**
CLIFFORD J. PROUD
United States Magistrate Judge